Good morning, your honors, and may it please the court, Dan Geiser for the petitioners. The immigration judge below wrongly determined that the petitioners were not credible, solely because they failed to provide corroborating documents in support of their testimony. In doing so, the immigration judge violated this circuit's settled precedent that corroboration is not required in the absence of a specific and legitimate reason for questioning the applicant's testimony, and in this case there was no such reason. Well, there was no explicit reason. There was no explicit reason. He sure as heck signaled his dubious assessment that this fellow was flying every weekend to work in the family business from the southern end of the island of Mindanao. It's pretty evident that why he, why this I.J. was highly dubious, but you're also correct that he didn't make the explicit finding, so. Your honor, that's certainly correct, and under this circuit's precedent, the finding must be explicit. In the absence of an express finding, the testimony is deemed credible as a matter of law. In this case, though, it is undisputed that in terms of express findings, the immigration judge did base his credibility determination only on the failure to corroborate and not on any other ground for doubting or disbelieving the petitioner's testimony. Well, is it established in this circuit that where evidence is reasonably available and not provided, that there's no adverse inference that we can draw from that? There's no requirement here? Your honor, I believe that is the rule in this circuit, and it's clear from a series of this circuit's precedents. First, in Lauda, this court held that credible testimony does not require corroboration. It's not subject to a corroboration requirement, and the government concedes this. And the court has also held repeatedly that in the absence of a specific reason for calling testimony into doubt, the testimony is deemed credible as a matter of law. So combining these two rules, it actually is clear that in the absence of a specific independent reason for questioning testimony, the testimony is credible. And once you have credible testimony, it is not subject to the corroboration requirement. Now, the government has conceded both of those key predicate points. They've conceded the point in Lauda, and they've conceded, as they must, that credible testimony or the testimony is, in fact, credible where there is not a specific reason for calling it into doubt. And this court has, in fact, held, following this exact logic, this ruling in Cattaria. It did the same in Obovian. It did the same in Shire. It did the same in Salam. It has repeatedly held that in the absence of a specific reason for questioning a petitioner's testimony, the testimony is, in fact, deemed credible as a matter of law, and it's not subject to the corroboration requirement. How do you explain Judge Hall's footnote 2 in Sidhu? With the reservation of the issue in Lauda? Right. In... Explaining Lauda. You're on... I'm saying Lauda makes clear that corroboration of credible testimony is unnecessary, has no bearing on the question of whether failure to corroborate can justify an adverse credibility determination. Your Honor, Lauda did reserve the issue, but that is not the same as deciding it against us. No, but... But there's really no occasion to address the situation we have here, because as the Court acknowledged in footnote 3 of that opinion on 1091, in that case, the Board of Immigration Appeals had an express reason for doubting the petitioner's testimony, and, in fact, acknowledged as much on the record, which is why, perhaps, in concluding the discussion on the corroboration requirement, the panel in Sidhu, in fact, held that the corroboration requirement can be appropriate where there is a reason for questioning the reason. And, in fact, in cases... What do you make of the I.J.'s statement about the apparent in... A degree of incredulity with regard to flying, commuting across the Philippines to work in the family business every weekend. Your Honor, unfortunately, we don't know what to make of his statement, because he didn't make it expressly, which is exactly why this Court requires express and explicit credibility determinations. It is unconceded, and the government, in fact, has conceded, that in this case, and if you look to page 33 of the administrative record, the whole entire ruling of the immigration judge was based on the failure to corroborate. It was not based on other reasons. Well, no, I'm looking at page 33 right now. The I.J. specifically says there's no evidence in the record to demonstrate that the organization, that Abu Sayyaf sought to punish the respondent on account of any of the grounds enumerated in the Act. And what do we do with that? Well, in that case, he's discussing no evidence, which from earlier in the paragraph, the I.J. apparently distinguishes between testimony and evidence. He starts a paragraph with background evidence may be needed to evaluate the credibility of an asylum applicant's testimony, and he concludes we only have his testimony. So this, in fact, is... He says the evidence is not persuasive. There's no persuasive evidence to demonstrate that Abu Sayyaf was punishing the respondent on account of the grounds enumerated in the Act. Now, we have the evidence of the hand grenades, some thinly veiled threats, and the I.J. seems to have said, okay, look, even granting that, it's just not clear that this guy's being persecuted on account of the fact that he's a Christian or the fact that he's of other grounds enumerated in the Act. In fact, Mr. Dominguez at one point testifies that he was being persecuted because he was rich, which I don't think is an enumerated ground. No, it's not, Your Honor. But he also testified that he was persecuted because he was a Christian, and then that fact was identified in the letters from Abu Sayyaf. And this Court has held that... The letters which weren't admitted, which were never produced. They weren't produced, but he did explain the failure to produce them on page 81 of the administrative record, and that explanation was not challenged by the immigration judge in his ruling. But more importantly, even if the immigration judge was referring to the testimonial aspects of the evidence, not, in fact, the documentary aspects that were or were not produced, this Court has held that he must expressly state why he finds the evidence unpersuasive. It is not enough simply to say, I find some evidence unpersuasive, but I won't identify which piece of that evidence, in fact, I doubt. And this Court made that point, I believe, in Aguilera-Corda, where they said that the reason that we require express and specific rulings is to ensure effective judicial review. If not, it's not clear from this record one of the many grounds, as the government, in fact, has identified in their brief, that someone may have doubted the petitioner's testimony. We don't know, in fact, which ground this immigration judge may have doubted their testimony, if, in fact, he doubted it at all. All we know from this page of the administrative record, which contains the entirety of his holding, is that he doubted their ability to provide evidence that he thought should have been provided. And under this circuit's rule, that is simply not enough. Now, the government has attempted to challenge this rule in a variety of cases, but the only cases they can cite, which is true with Sidhu, it's true with Chub Chub, it's true with Mejia-Payez, were all cases where, unlike here, the immigration judge had an actual and expressed reason to doubt the testimony, and they stated that reason on the record. And in this circuit's precedent, it's clear that where, in fact, a stated reason is impermissible, corroboration isn't required. So this case is actually an easy application of this circuit's rules. It certainly can't be the case that where an immigration judge expressly doubts a petitioner's testimony, that if the reason for that doubt is illegitimate, then corroboration is not required. But if an immigration judge expresses no doubt, then corroboration can be required to determine testimony. And this, again, follows from the two rules developed in LADA with credible testimony not being subject to a corroboration requirement, and then in Kalubi and a variety of this circuit's precedent, holding that unless there is a specific and legitimate reason for questioning an applicant's testimony, the testimony is, in fact, deemed credible as a matter of law. Is there any evidence here that Mr. Dominguez – let me back up. Let me start again. Is there any evidence here that the government of the Philippines has either sanctioned what Abu Sayyaf has allegedly done to Mr. Dominguez or that they are unwilling to stop them? There is evidence in the record that the Dominguez's approached both the police and the military. And in response to that, they received further threats. And not only further threats, but those threats were subsequently acted on. On their way back – How is that unwilling or unable? It is not clear from my reading of the record whether it's unwilling or unable. Are you suggesting, counsel, that as a result of having reported this, that there's a causal connection between the threats they received and reporting to the police? That was what I took from your statement. I don't believe so, Your Honor. I think the point is that the government, for whatever reason, is unable to prevent this sort of persecution. How many times did they testify that they went to the police and complained about the threats? They, I believe, went once to the police and once to the military. But, again, this ground is not challenged by the government. The only issue on this appeal, and it also wasn't challenged, I should mention, by the immigration judge. And this Court is, of course, deciding and evaluating the actual express ruling of the immigration judge, not a ruling that the judge could have provided. And in this case, the judge provided no doubt. He did not expressly identify that he disbelieved that they approached the police, that they gave the letters of the threats to the police, or that they actually went to the military and received violence in return for reporting the crime. I'd like to reserve any remaining time I have for rebuttal unless the Court has further questions now. Thank you. May it please the Court. I'm Susan Hauser, appearing for the Attorney General. First, I'd like to just briefly talk about what the government has argued in this case and what we've conceded and what we haven't. The petitioner talks about LADA and related cases such as Kataria. In those cases, the petitioners, the aliens have been found to be credible. So the Court in those cases found that the IJ and the BIA cannot require an alien who has been found to be credible to meet an additional burden of proof of submitting corroborating evidence in order to carry their burden of proof. Now, that's not the case here because the alien, as both sides agree, the immigration judge found that the alien is not credible. Well, I think that's going to be disputed by the other side. Where in the IJ's decision is that found? There's a difference here, I think, between, if I understood what you were arguing, between sort of a presumption of credibility and a presumption against credibility. Are you suggesting that IJs begin with a presumption against credibility unless they affirmatively find the applicant to be credible? No. In this case, I believe that the immigration judge's decision is fairly rare to say, to make a finding that the alien is not credible. Okay. Can you point to, we might read that in between the lines. Can you point to any language here that would suggest that he thought that Mr. Dominguez was not credible? I will do that. But before I do that, I'd like to say that if the Court finds that there is no express credibility determination here, then it's an easy case. And what's the result if it's an easy case? If there is no express credibility finding, express negative credibility finding here, then the alien's testimony has to be accepted as true. And does the government contend that if the alien's testimony is accepted as true, then it must go back to the Attorney General for an exercise of discretion here? There is sufficient evidence, in other words, to support the asylum claim. Correct. And I believe both sides are agreed that if his testimony is accepted as true, it would have to go back for merits determination. However, I think it's fair to read the immigration judge's decision in this case, improper to read it as making a negative credibility finding. The immigration judge starts out by saying, background evidence may be needed to evaluate the credibility of an asylum applicant's testimony. The respondent has presented no evidence. We have only his testimony. Whoa, whoa, whoa, whoa, whoa, whoa, whoa, whoa. We have absolutely no evidence to satisfy this court that such evidence would be unavailable. Correct. And that's referring. Well, that's not finding anything about credibility. That has to go with whether he's established that he doesn't have any corroborating evidence. So let's not elide what the, I accept your candor on how easy this case becomes, but I don't think eliding what. Well, if you go on. So we only have his testimony. If you go on a little further in the paragraph. You're skipping over what I thought you were going to go to. I thought he made a gesture where he says respondent's claim, frankly, is based upon his claim that this business that exists was a family owned business and that he on weekends would travel by plane to the southern island of Mindanao after having earlier established how far away the two were. But that's about as close a brush with express credibility finding that I can find. I certainly don't find it in his saying respondent's presented no evidence that such evidence would be unavailable. And again, if that's the court's decision. That begs the question that he has to present any evidence at all. Well, I think one way of looking at this is that. Why can't these IJs just make the express finding if that's the way they feel? It would make it much easier on all of us if they did. Well, this has been on the books for a long time, this requirement in this circuit. They certainly have to be aware of it unless there's some breakdown somewhere. I really think that reading this decision. Well, no, it's supposed to have an express finding. I think this is an express finding. Which page are you on, counsel? I'm on page 33 of the record. It's page 4 of the decision. Okay. And which language do you think suggests that the IJ found that Mr. Dominguez was not credible? Yes. If I could go through my analysis here of why I think the immigration judge made that finding. First sentence. I'm getting excited on these immigration cases. The first sentence, he says, That means, okay, what I'm looking at here is the documentation in the record, and I'm looking at documentation in order to make my credibility finding. That's what this first sentence says. Second sentence. Respondent has presented absolutely no evidence, i.e., no documentation, as referred to in the previous sentence, to satisfy this Court that such evidence would be unavailable. This is still referring to the credibility assessment, specifically mentioned credibility in the first sentence. Then third sentence, he goes on to talk about how because there's no persuasive evidence in the record, i.e., the credible evidence that he's been talking about, there's nothing to demonstrate that there's any connection here. Then, and this is also telling, he says, I also find, also means he's switching gears here. I also find that the respondent has failed to establish this more likely than not. So here he's talking about the merits of the case. He's saying even aside from the credibility finding, and separate from the credibility finding, he's failed to meet the merits. This is why I feel that this is a sufficiently clear finding as to credibility. Now, again, if the Court disagrees with me, this becomes a very simple case. I think you've made a valiant effort to rescue this I.J. from not making a specific finding. But I counsel with all respect, I cannot jump into a credibility finding when he starts out talking about credibility and then immediately zeroes in on the failure to provide corroborative evidence, which he has not proved to the I.J. does or doesn't exist. He's talking, read fairly and squarely, I think, he's talking about the failure of this man to come forward and put forward the business documents, something in addition to his testimony. And he's begging the question, until he makes a finding that he doesn't find him credible, period, then he doesn't have any obligation, the petitioner doesn't have any obligation to provide it. Well, I think that's part of the point of this case. That's part of the issue here is, does an alien have a burden in the credibility phase to present documentation where it's reasonably available? The petitioner argues- You don't dispute that, do you? That our case law says no, corroboration is not required. I most strongly do dispute that, and that's what my supplementary brief was all about. The petitioner is saying that this Court decided that issue in Lada and Katara and several other cases, but that's not a correct statement of those cases. There's two phases of an immigration judge's finding. First phase on credibility, and the second phase is on the merits, if credibility is found. Now, this Court has made it clear, and this is what Lada is about and Katara is about in the other cases that the petitioner cited, the Court has made it clear that documentation can't be found in that second phase, can't be required in that second phase of burden of proof. But the Court has never held that documentation can't be required as a condition of finding an alien credible. And furthermore, I would say that that would be an erroneous interpretation of the regulation, which uses the permissive term may. An immigration judge may consider documentary evidence. Now, the government doesn't argue, and we made this clear in our brief, government doesn't argue that in all cases an alien has to present documentary evidence. We realize that there are cases where true refugees come to this shore perhaps with nothing more than the clothes on their back. It may be that they fear persecution from government or from a very powerful organization in their home country, and the documentary evidence that they would like to get they just can't get because of those reasons. So all that the Attorney General has interpreted the law to require is that an alien either present corroboration when it reasonably would be expected or explain. Can we just walk through, you said Katara is part of this line of cases. So help me understand how you're parsing the language. I'm looking at page 1113. Katara says it is well established in the circuit. I don't dispute that there are some counsel. If you don't want to answer my question, I'll just go on. I'm ignorant of your meaning. I'm sorry. I wasn't looking at you, and I didn't realize that you were still speaking. It is well established in the circuit that the BIA may not require independent corroborative evidence from an asylum applicant who testifies credibly in support of his application. I understand your argument to be that the IJ conclude without more, just on testimony, that he isn't credible. Is that correct? The IJ can listen to the testimony and decide that that testimony is not persuasive because he doesn't find the testimony credible. Well, I think what this sentence means in Katara, what it refers to, is that after an applicant has testified credibly and after the immigration judge has made a finding that the applicant has testified credibly, then additional corroboration cannot be required. Additional? Or documentation cannot be required after that point. If an alien comes into immigration court and testifies, and the immigration judge finds Well, what about the citation to Obovian, which they include after that, stating that corroborative evidence is not required from an asylum applicant whose testimony is unrefuted. Well, in Obovian It is well settled that we must accept an applicant's testimony as true in the absence of an explicit average credibility finding. Well, that goes back to what I said about this case earlier, that if the Court finds that there was no credibility finding here, then it becomes an easy case. Well, here's this Hartooni v. INS. I'm sorry, what case? Hartooni. I'm looking at page under Head Note 14. States the immigration judge is in the best position to make credibility findings because he sees the witness as the testimony is given. But the ILJ must have a legitimate articulable basis to question the petitioner's credibility and must offer a specific cogent reason for any stated disbelief. And it goes on to state, absent an explicit finding that a specific statement by the petitioner is not credible, we are required to accept her testimony as true. So we're talking about an explicit finding that a specific statement is not credible. We don't have that here. And again, I would say if that's the conclusion of the Court, we have no quarrel with the finding that the testimony has to be taken as true. But I think there's two things. But that's what their cases say. And we can see that if there's no expressed credibility finding by an immigration judge, testimony is taken as true. That's not an issue here. However, I do think that lack of corroboration can be a specific cogent reason. And I think that that's a That might go to a different point. This is where I thought the government might be going with that paragraph on page 33. Even if we were to grant that Mr. Dubangas has testified credibly, an IJ might be justified in concluding that the evidence is nevertheless not persuasive that Abu Sayyaf has punished him on account of the grounds enumerated in the Act,  In other words, it's a sufficiency of the evidence problem granting that he may have testified credibly. He may have come in and said, Somebody shot up my house. I think it was Abu Sayyaf. I'll bet they're after me because I'm a Christian. And an IJ might say, You know something, that's just too speculative. I believe everything you've said, and I believe that you sincerely believe that. But that's not sufficient evidence for me to grant asylum. Now, is that the government's argument here? Well, that goes to once testimony is taken as true, then you move on to the second phase of the analysis, which is have they met their burden of proof to show things like the on account of. And I understand the government's given that part away. We agree in this case that, or we would not object in this case to a remand, if the court found that there was no express credibility, negative credibility finding, and therefore his testimony had to be taken as true, we would not object to remand in this case. What you're really arguing, as I understand it, is that the IJ, as part of the credibility assessment before he or she makes the credibility assessment, is entitled to ask for documentation to support the testimony. Is that correct? Correct. And, in fact. And our cases don't require that corroboration. Well, the cases that this court has decided, like Lada and Katara and so forth, those were all cases where there was no express credibility finding made or where the IJ and the BIA had already found the alien to be credible. There's no case that's comparable to this case where the government is arguing that there was a negative credibility finding that was made and that the basis for it was a lack of documentation. But we have said and read it has to be explicit. We've said you cannot have implicit credibility findings. You know, we're skinning this cat. Why can't the government live with an interpretation that says that the IJ, in listening to the testimony, can make a credibility determination? Because the IJ is looking at the immigrant testify. And if the IJ, listening to that testimony, has reasons, specific reasons, not to find that testimony credible, then the IJ is going to resort to a requirement of corroborative evidence. Well, the reason that the government. I'm sorry. What is wrong with that? What's wrong with that is that you can have a situation such as this one where you have an alien who comes into this country illegally, has absolutely no documentation. We don't have a clue who this person is. Is he Mr. Dumangas? Is he a citizen of the Philippines? Did he come from the Philippines? Is he who he says he is? We don't know. He's never shown a passport. He's never shown a visa. He could be anybody in the whole world. And under the rule that the petitioner urges, and this is a really very important point, you can have a person who could sneak across the border into this country and then destroy every document that would identify them if they had them, then come into immigration court and tell a totally phony story that had no internal contradictions. Right. So the government has two ways of going there. One, they can say, the IJ can say, I don't believe you. Your eyes are shifting. You're nervous as you tell me that your name is John Smith, and I don't believe that your name is John Smith. I've seen too many witnesses on the stand. You're looking furtively. You're looking to counsel for support. I don't believe you. Or the government can say, you know something? You haven't presented sufficient evidence that you are John Smith. I've heard you say that you are John Smith. But I don't have any way, I can't just take your say-so on that. That's not sufficient evidence. That's not the argument you've made here today. Under this Court's rulings, it's very difficult for an IJ to do that. This Court has held that an IJ can, in some ways, an IJ cannot make those sorts of determinations. There have been cases by this Court that have held that an alien looking away with shifting eyes and so forth might be a cultural difference, and an IJ cannot assume that that indicates dishonesty. Also, the fact that testimony has to be taken as true if there's no express credibility finding means that if the alien says that he's John Doe and the alien can't, or the immigration judge can't then turn around and say, well, in the burden of proof phase, I'm going to say you didn't prove you were John Doe. In the credibility phase, he said he was. And under this Court's precedence, the immigration judge has to take that as true. Well, let's take your hypothetical, though. And I grant that the Court, different judges on this Court have different views about the propriety or not of putting on the record the kind of demeanor that Judge Bybee just spoke about. And I, having tried cases and had to make record or fail to make record, see it absolutely appropriate for an IJ to put on the record, as long as it's not being abusive, not using it to intimidate the witness, a verbal description or a description for the record so we can understand the context. So I don't have any problem with that. But what I'm trying to understand is how the IJ addresses your hypothetical, which is you get somebody who shows up literally with no documents. Now, doesn't the IJ have the ability to examine into why the person would have no documents? And wouldn't, in the course of that examination, the IJ be able to develop, as they would for any part of the examination, specific and cogent reasons to disbelieve the explanation as to why the immigrant has no documents? I believe so. Why isn't the structure that we're in one that says you can't, even if the person comes in and testifies, at least on the facts of this case, because this is a case where he did have some documents, I take it. No, he had no documents. None? No identification documents? He has zero documents. The only documentation that was in the record in this case was some country condition information, which was totally- But he has no, they never took a, they have no- He referred in his asylum application to a passport. He never presented that to the court, never showed them a visa, never showed them one scrap of documentation. But did anybody examine him as to why he didn't have any of that? The immigration judge asked him during his hearing if he had any documentation, and he said no. Now, this also gets into the burden of proof. The alien has the burden of proof in immigration proceedings, and under the regulation and under the BIA's- I'm sorry? I'm sorry. I'll let that go. But the way the BIA has interpreted- Let me ask you this. If there's a doubt that who this person is, you do get information about these folks when they fill out their application. There's nothing in the record on this person at all to show- Well, I mean in the ordinary course of events. They put their name in there and where they came from. What he says his name is and where he says he came from. Okay, well, you can't check with the Philippine government on that. Well, the INS or the DHS doesn't have sufficient resources to investigate asylum claims. I wish they did. In several cases that have been notorious in the newspapers of people claiming asylum, where various celebrities and stuff enlisted on their behalf, and in those cases were investigated, they turned out to be false. But we don't have the resources to go over and investigate. Plus- If there's a doubt as to whether this person is who the person says he or she is, why can't you go to the Philippine Counsel General? DHS could ask the local people to investigate. However, like everything else, the agency has to look at the resources that it has and how those resources can be best spent. There are not sufficient agents on the ground in these other countries to investigate every single asylum claim. And this Court's very well aware of a large number of asylum claims that are made. And in addition, there's a confidentiality requirement for asylum cases. Our government, by regulation, has to make sure that asylum claims are kept confidential. We can't just walk over to, you know, the Philippine government and say, hey, who is this person? You know, that could potentially- If the IJ had some lingering doubts, wasn't sure that he or she was prepared to make a credibility finding, is there any way of offering the parties a continuance? This is a family that would claim to be very prominent in the Philippines, apparently has family here in the United States, didn't offer any family witnesses who could come forward and say, gee, we know of the circumstances. You know, let us offer our testimony in support of their application. Does the IJ have the- If he's got lingering doubts, can he say, look, I'm going to have a continuance. I really would like you to come back with any additional proof that you've got about this. I mean, is there a way that the IJ can signal that and control this? Well, this person, I believe, was represented before the immigration judge, and the alien has the burden of proof, and immigration judges, of course, can grant continuances. In this case- What happens here? Let's assume we remand. It goes back to the attorney general, and let's suppose that you're absolutely persuaded this guy's story is a total cock and bull story, that the only problem is that the IJ failed to make the required explicit finding. What discretion does the attorney general have on remand to, notwithstanding our finding of acceptance of his story, to exercise discretion not to grant asylum? Well, if the court finds that the immigration judge did not make an expressed credibility finding in this case, then under the court's precedence, the court would say that his testimony must be treated as true. The court would then remand. Both sides have agreed that the court then would be required to remand to look at whether he met his burden of proof, which would be such things as was he persecuted on account of one of the five grounds, could he safely relocate, all those other things. And then, ultimately, there's the exercise of discretion. So is that not part of the safety valve for the concern of the phony terrorist who sneaks across the border, that ultimately the AG has the final say on? Well, if you tell a story, say I were a terrorist and I came across the border into this country and I knew about the asylum laws and intended to exploit them, and I went into immigration court, I would tell a story that had no internal contradictions. I would tell a story that would show on account of. If they're that clever, they'll also come up with some corroborating evidence. So we've seen the cases where they have the letter from the political chief in a political party that's been out of existence for a couple of years, and those were circulating around for a while. But I think we're getting a little far away from the record in this case, but I'm trying to understand your point and be, at least if not responsive to it, understand it. And on the record here, you have, A, it doesn't appear that all of these failings of the record are part of the record. Maybe I'm wrong about that. But all your concerns about that the IJ was concerned he didn't have a passport, didn't have this, didn't have that, that that was weighing on him, basically what it comes down to is this cryptic statement about the flight across the Philippines and that he hasn't demonstrated why he doesn't have any corroborative evidence. Well, the passport is corroborative evidence and the visa is corroborative evidence. I think we can argue all day about what one reads into page 33, but I appreciate your explanation. Any further questions? Thank you. I'll give you a minute for a bottle. That's more than enough. Just a few quick points. One point is that the interpretation of the governing regulation has been expressed. The government's interpretation of that regulation was expressly rejected by this court in LADA. So, in fact, it is governed by the circuit precedent. The government suggested that aliens who testify credibly aren't then required to corroborate their testimony and then cited Kateria and some other cases. In fact, in Kateria and Salam and Shire and Ibogaine, all of those cases involved findings that the alien was affirmatively unbelievable. And then that unbelievable finding was supplemented by the failure to corroborate. Once the circuit rejected the finding that on the non-corroborative ground, they then held that the testimony was deemed credible as a matter of law and thus corroboration was not required. So we think that's actually the better reading of this Court's cases. We'd also like to point out that credible testimony is deemed sufficient, so long as it goes specifically to each element of a claim to satisfy those claims. So once the testimony is deemed credible, it's no better or no worse than documentary evidence. So, in fact, if the testimony satisfies each element of their claims, that should be enough to grant relief. And then the final point is, as Judge Fischer pointed out, it is absolutely true that the key to weeding out illegitimate claims is to use effective cross-examination. The government, in their brief, effectively showed a number of questions that could have been asked but that were not asked to this petitioner that might have shown his story were untrue. If, in fact, it is untrue, we believe it is, in fact, true. And the immigration judge did not base his finding on any of these potential discrepancies in the record. And on that, if there are no further questions, we'll submit. Thank you. I appreciate the argument on both sides. I want to thank counsel for being part of our pro bono representation project. All right, we'll take up the next matter, U.S. v. Torres Jimenez.
judges: Pregerson, Fisher, Bybee